IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ADRIAN M. REQUENA,

        Plaintiff,

v.                                                                                           NO.13-3043-SAC

WENDY NEWKIRK, MICHAEL
CRANSTON, and LEVON CROTTS,

        Defendants.

MEMORANDUM AND ORDER

This civil rights action under 42 U.S.C. § 1983 was commenced by the *pro se* plaintiff Adrian Requena while he was in state custody, but he is no longer incarcerated and has notified the court of his change of address (ECF# 73). The case now comes before the court on the defendants' dispositive motions: the defendant Cranston's motion to dismiss, or in the alternative, motion for summary judgment (ECF## 75 and 76), and the defendants Wendy Newkirk's and LeVon Crotts's motion to dismiss, or in the alternative, for summary judgment (ECF## 85 and 86).

In 2016, the court dismissed the plaintiff Requena's second amended complaint after two screenings pursuant to 28 U.S.C. § 1915(d). ECF## 12, 25 and 26. Requena appealed raising eight arguments directed at his nine different claims. *Requena v. Roberts,* 893 F.3d 1195, 1205 (10th Cir. 2018), *cert. denied*, 139 S.Ct. 800 (Jan. 7, 2019). The circuit panel observed: "We will not act as his counsel, searching the record for arguments he could have, but did not make, particularly when he has not made the slightest effort to tie his arguments to the record." *Id*. The panel affirmed the dismissal of Requena's second amended complaint except for his Eighth

Amendment claim against the defendants Newkirk, Cranston, and Crotts for their failure to protect him from the beating on June 30, 2012. 893 F.3d at 1218. Upon the remand of this one claim, the district court ordered a *Martinez* report to be prepared for the purpose of having the prison officials' written response to the plaintiff's allegations along with the officials' affidavits and internal reports. ECF# 60. The court found "that the proper processing of plaintiff's claim alleging a violation of the Eighth Amendment cannot be achieved without additional information from officials of the Hutchinson Correctional Facility (HCF)." *Id.* at p. 5 (citations omitted). The *Martinez* report was filed in June of 2019. ECF# 71.

In August of 2019, the defendant Michael Cranston filed his dispositive motion (ECF## 75 and 76) along with the required notice to the *pro se* plaintiff (ECF# 77). The notice included this warning, "If you do not respond to the motion for summary judgment on time with affidavits and/or documents contradicting the material facts asserted by the Defendant, the court may accept Defendant's facts as true, in which event your case may be dismissed and judgment entered in Defendant's favor without a trial." ECF# 77, p. 2. The plaintiff filed no response within the 21-day period required by D. Kan. Rule 6.1(d)(2).

In October of 2019, Levon Crotts and Wendy Newkirk, filed their dispositive motion (ECF## 85 and 86) along with the required notice to the *pro se* plaintiff and the same warning quoted above (ECF# 87). These defendants also filed a motion to stay discovery on October 7, 2019. ECF# 88. The plaintiff filed a pleading entitled, "Opposition to Dismissal or in the alternative summary judgment," in which he stated these three points--that the defendants have not conferred with him, that

he was working on discovery, and that the defendants' filings are taking more than five days in the mail to reach him. ECF# 89. The defendants then opposed plaintiff's effort to delay consideration of their dispositive motions, and the defendant Cranston also argued the plaintiff had failed to file any timely opposition to his dispositive motion. The court entered an order granting the defendants' motion to stay discovery and gave the plaintiff until January 3, 2020, to respond to the dispositive motion of the defendants Crotts and Newkirk. ECF# 92.

On December 30, 2019, the plaintiff submitted a filing entitled, "Plaintiff's motion for summary judgment," consisting of one sentence, "[t]hat discrepancies in testimony are for jurors to decide," and his prayer asking, "that the court will grant summary judgment in his favor and let a jury decide which party is telling the truth." ECF# 93. The defendant Cranston responded that the plaintiff has not filed a response to his dispositive motion and that the plaintiff's motion should be denied for not complying with the court's rules. ECF# 94. The defendants Crotts and Newkirk filed a response making the same arguments as Cranston. ECF# 95.

To the extent that the plaintiff intends his filing (ECF# 93) to be a motion for summary judgment seeking affirmative relief on his remaining Eighth Amendment claim, it is denied. The motion fails to comply with any of the procedural requirements for such a motion, particularly those most essential to seeking such relief. His motion does not show he "is entitled to judgment as a matter of law" on any part of his remaining claims. Fed. R. Civ. P. 56(a). In short, his motion presents no arguments or issues ripe for decision in a summary judgment proceeding. The Tenth Circuit has insisted "that pro se parties follow the same rules of procedure that

govern other litigants." *Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009) (internal quotation marks and citation omitted).

The plaintiff's prayer in his motion indicates he only seeks a jury trial. ECF# 93. For that reason, the court also construes the plaintiff's filing to be his opposition to the dispositive motion brought by the defendants Crotts and Newkirk. His response, however, suffers equally from procedural deficiencies. It consists of no more than a single conclusory statement that "discrepancies in testimony" are jury questions. *Id.* The plaintiff does not identify what he considers to be "testimony" and does not argue, explain or even list what he regards as "discrepancies" for the jury to decide. Despite the notice given him, the plaintiff does not submit any summary judgment evidence, such as witness statements, a verified pleading or other Rule 56 documents countering the defendants' statements of fact. The plaintiff does not cite, mention or discuss the *Martinez* report. He does not refer to or refute any argument, legal or factual, found in the defendants' motions. It is not the court's responsibility to peruse the record or to make the plaintiff's arguments for him on his remaining claims. As the plaintiff was warned in the notice, the court "may accept defendant's facts as true, in which event your case may be dismissed and judgment entered in defendant's favor without trial." D. Kan. Rule 56.1(f) and ECF## 77 and 87). Rule 56(e) provides that a party's failure to "address another party's assertion of fact as required by Rule 56(c)" authorizes a court to consider the movant's fact to be undisputed and to "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Just as the Tenth Circuit said in the plaintiff's appeal, it does not fall upon the court
4

to peruse the record in search of evidence in the plaintiff's evidence, nor does it have the duty to fashion arguments opposing the defendants' motions. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

**REMAINING CLAIM ON REMAND AND TENTH CIRCUIT DECISION**

As this court has already ruled, "the limited issue identified upon remand, . . . [is] whether the defendants violated the Eight Amendment by failing to adequately protect plaintiff from other prisoners." ECF# 60, p. 4. The court's conclusion is based on the Tenth Circuit's ruling as quoted here:

> 1. Failure to Protect
> In the complaint, Requena alleged that on March 24, 2012, he was charged with removing drumsticks from the Native American callout without permission. He was subsequently found guilty of impermissibly having those items in his cell. As a result of his actions, prison officials removed the drumsticks which had been in the Native American callout for decades. Believing other Native American inmates would retaliate against him for causing the drumsticks to be removed, Requena twice spoke with unit team manager Newkirk, "express[ing] his concern that something might happen to him" and requested to be transferred. (R. Vol. 1 at 741.) Newkirk told him a transfer "might take a couple [of] weeks." (*Id.*) On May 31, 2012, Requena talked to Cranston (apparently a mental health provider) about his fears. The next day, June 30, he was brutally beaten with a blunt object by two members of the Native American callout during the evening mealtime. He also claimed Correctional Officer Crotts knew a fight was about to occur because inmates were "table hopping," yet he prevented another officer from doing anything because he "wanted to see a fight." (*Id.* at 742.)
> . . . .
> In the complaint, Requena alleged Newkirk, Cranston, Crotts, Graves, and Dusseau violated his Eighth Amendment rights by failing to protect him. The judge did not address this claim before dismissing it. Dismissal was appropriate, but only in part.
> Under the Eighth Amendment, prison officials have a duty to "provide humane conditions of confinement," including "tak[ing] reasonable measures to guarantee the safety of … inmates." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks omitted). This duty includes "a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833, 114 S.Ct. 1970 (ellipsis and quotation marks omitted). To prevail on a failure to protect claim, an inmate must show (1) "that the conditions of his incarceration present an objective substantial risk of serious

5

harm" and (2) "prison officials had subjective knowledge of the risk of harm," "[i]n other words, an official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Howard v. Waide*, 534 F.3d 1227, 1236 (10th Cir. 2008) (quotation marks omitted).

It appears Requena has adequately pled an Eighth Amendment claim against Newkirk, Cranston, and Crotts with regard to the June 30 beating. Newkirk and Cranston were allegedly aware of his fear of retaliation by members of the Native American callout but did nothing and he was subsequently beaten by two members of the callout. Crotts allegedly knew a fight was about to occur and prevented another officer from averting it. . . .

Dismissal of Requena's Eighth Amendment claim for failure to protect against Newkirk, Cranston, and Crotts was improper.

*Requena v. Roberts*, 893 F.3d at 1213-15 (footnotes omitted). In a footnote concerning the plaintiff's claim against the defendant Crotts, the Tenth Circuit added:

> The case against Crotts is, at best, a close one. First, the allegations are based on hearsay statements from an unknown officer. Second, there is no indication that Crotts was aware of Requena's concerns of retaliation or that he would be injured.

893 F.3d at 1214, n.14. This decision will control the court's analysis of the second amended complaint.[1] Specifically, "[i]t appears Requena has adequately pled an Eighth Amendment claim against Newkirk, Cranston, and Crotts with regard to the June 30 beating." 893 F.3d at 1214.

**STANDARDS GOVERNING MOTIONS**

The standards governing analysis of a Rule 12(b)(6) motion for failure to state a claim for relief are well settled. See *Safe Streets Alliance v. Hickenlooper*,

---

[1] The court notes one exception. The defendant Cranston rightly observes that the Tenth Circuit was incorrect in stating that Requena had alleged his meeting with Cranston occurred the day before he was attacked by other inmates. Instead, Requena alleges that he talked with Cranston on May 31 and that he was attacked a month later on June 30.

6

859 F.3d 865, 878 (10th Cir. 2017). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

On summary judgment, the court determines whether the movant has shown that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014). In doing so, the court views the evidence and draws reasonable inferences from it in a light most favorable to the nonmoving party, *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1037 (10th Cir. 2011). The moving party carries the initial burden of establishing on the record that it is entitled to judgment as a matter of law. *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992), *cert. denied*, 506 U.S. 1013 (1992). If this burden is met, the opposing party then come forward with specific facts from which a rational fact-finder could find in its favor. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). The Tenth Circuit has held:

> A Martinez report is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence. . . . The plaintiff's complaint may also be treated as an affidavit if it alleges facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury. *Jaxon v. Circle K Corp.*, 773 F.2d 1138, 1139 n.1 (10th Cir. 1985) (citing, *inter alia*, *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir.1980)) ("In certain circumstances a verified pleading may itself be treated as an affidavit in support of a motion for

summary judgment, but only if it satisfies the standards for affidavits set out in Rule 56(e).").

*Hall v. Bellmon*, 935 F.2d at 1106, 1111 (10th Cir. 1991). Affidavits are to be based on personal knowledge and set forth facts admissible in evidence. *Id.* "Conclusory and self-serving affidavits are not sufficient." *Id*. For that matter, "[u]nsubstantiated allegations carry no probative weight in summary judgment proceedings." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir.), *cert. denied*, 549 U.S. 856 (2006). When a plaintiff's opposition fails to "set forth facts that would be admissible in evidence," because they present only conclusory allegations, it is insufficient to put a material fact in dispute. *Strope v. McKune*, 372 Fed. Appx. 896, 898-99 (10th Cir. 2010).

Mr. Requena has filed no response to the *Martinez* report, and more importantly, he did not file any response to the defendant Cranston's dispositive motion and the response he filed to the other defendants' motion is wholly deficient in that it does not contest any fact or argument made therein. Following its local rules, the court will consider and decide without further notice the defendants' pending motions as essentially uncontested. D. Kan. Rule 7.4(b). On a Rule 12(b)(6) motion, the court may consider "not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citations omitted), *cert. denied*, 558 U.S. 1148 (2010). "In determining whether a plaintiff has stated a claim, the district court may not look to the *Martinez* report, or any other pleading outside the complaint itself, to refute facts specifically pled by a plaintiff, or to resolve factual disputes." *Swoboda v. Dubach*, 992 F.2d 286, 290 (10th Cir. 1993) (citations omitted). Because the court has considered the *Martinez* report filed in this case, in evaluating

the plaintiff's claim, it decides the defendants' motion under the request for summary judgment contained therein. *See Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010) (district court's dismissal under Rule 12(b)(6) of a prisoner's complaint filed pro se characterized as "irregular" where court had not limited its review to the complaint).

## *MARTINEZ* REPORT

As already noted, the Court found earlier that the proper processing of Requena's remaining claim could not go forward without additional information from appropriate officials at HCF. *See Martinez v. Aaron*, 570 F.2d 317, 319 (10th Cir. 1978). The *Martinez* report was to provide an opportunity for HCF officials to investigate the events in question and to construct an administrative record from that investigation. Id. at 319. This report's purpose is to create a sufficient record from which "to ascertain whether there are any factual or legal bases for the prisoner's claims.'" *Breedlove v. Costner*, 405 Fed. Appx. 338, 343 (10th Cir. 2010) (unpub.), *cert. denied*, 563 U.S. 965 (2011) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991)). The *Martinez* "procedure 'allow[s] the court to dig beneath the conclus[ory] allegations' to determine whether dismissal or judgment is warranted 'without trial.'" *Hunnicutt v. Moore*, 2:18-CV-00667-JB-KRS, 2019 WL 4673151, at *2 (D.N.M. Sept. 25, 2019) (quoting *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987) ("There are limits, however, to what the court may do on the basis of a *Martinez* report; we have held, for example, that magistrates and judges may not make credibility determinations solely from conflicting affidavits." (citation omitted)). "On summary judgment, a *Martinez* report is treated like an affidavit, and the court is not

authorized to accept its fact findings if the prisoner has presented conflicting evidence." *Northington v. Jackson*, 973 F.2d at 1521 (citation omitted). "If the plaintiff presents no evidence conflicting with the factual findings contained in the *Martinez* Report, the Court may treat those findings as uncontroverted facts." *Bailey v. Andrews*, 2019 WL 1897842, *2 at n.19 (D. Kan. Apr. 29, 2019).

**OFFICIAL CAPACITY CLAIMS**

Such a claim is another way of pleading an action against the governmental entity itself. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "When a suit alleges a claim against a state official in his official capacity, the real party in interest in the case is the state, and the state may raise the defense of sovereign immunity under the Eleventh Amendment." *Callahan v. Poppell*, 471 F.3d 1155, 1158 (10th Cir. 2006) (quotation omitted). Sovereign immunity generally bars actions in federal court for damages against state officials acting in their official capacities. *Harris v. Owens*, 264 F.3d 1282, 1289 (10th Cir.), *cert. denied*, 535 U.S. 1097 (2001). It is well established that Congress did not abrogate the states' sovereign immunity when it enacted § 1983. *Quern v. Jordan*, 440 U.S. 332, 338-45 (1979); *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002), *cert. denied*, 538 U.S. 999 (2003). The official capacity claims against the state officials for monetary damages are barred by sovereign immunity. Furthermore, state officers acting in their official capacity are not considered "persons" against whom a claim for damages can be brought under § 1983. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989).

**CRANSTON'S DISPOSITIVE MOTION (ECF# 75)**

Cranston first argues that his counsel found no case law in this circuit recognizing "that a healthcare provider has a duty to protect prisoners from violence at the hands of other prisoners." ECF# 75, p. 8. In *Gray v. Sorrels*, 744 Fed. Appx. 563 (10th Cir. Aug. 1, 2018), *cert. denied*, 139 S.Ct. 1335 (Mar. 18, 2019), the plaintiff inmate brought a "failure to protect" claim against a healthcare provider who stopped prescribing psychotropic medications for the plaintiffs' cellmate who then attacked the plaintiff. The court held: "This allegation does not state Dr. Howard knew that stopping the medications would cause the cellmate to become violent. The amended complaint therefore did not allege facts indicating that Dr. Howard acted or failed to act despite his knowledge of a substantial risk of serious harm." 744 Fed. Appx. at 570-71 (citing *Estate of Booker v. Gomez*, 745 F.3d 405, 430 (10th Cir. 2014)). The Tenth Circuit's analysis certainly presumes a duty to protect.

"Prison and jail officials, as well as municipal entities that employ them, cannot absolutely guarantee the safety of their prisoners. Nonetheless, they have a constitutional duty to take reasonable steps to protect the prisoners' safety and bodily integrity." *Wright v. Collison*, 651 Fed. Appx. 745, 748 (10th Cir. 2016) (unpublished) (quoting *Cox v. Glanz*, 800 F.3d 1231, 1247-48 (10th Cir. 2015)) "To establish a cognizable Eighth Amendment claim for failure to protect, the plaintiff must show that he is incarcerated under conditions posing a substantial risk of serious harm, the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component." *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003) (quotations and citation omitted). "In other words, the official must "both be

aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Riddle v. Mondragon*, 83 F.3d 1197, 1204-05 (10th Cir. 1996). "For the subjective component, 'the plaintiff bears the burden to show that the defendants responded in an "objectively unreasonable manner"—that is, they 'knew of ways to reduce the harm but knowingly or recklessly declined to act."'" *Gallegos v. Finney County, Kansas*, 2019 WL 2613097, at *2 (D. Kan. Jun. 26, 2019) (quoting *Wright*, 651 Fed. Appx. at 748 (citing *Howard v. Waide*, 534 F.3d 1227, 1239 (10th Cir. 2008) (brackets and internal quotation marks omitted))). On the objective element, the Tenth Circuit has noted:

> There exists no precise definition of those types of conditions of confinement that violate the first prong of the *Farmer* test by "posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. A prisoner must demonstrate that the deprivation was sufficiently serious and that "a prison official's act or omission . . . result[ed] in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). This is an objective standard. Such conditions have been found to exist where prison officials disregard repeated warnings of danger to a particular prisoner and continually refuse to make the situation safer, for example by either separating the prisoner from other inmates who previously have attacked him on multiple occasions, see *Hayes v. New York City Dep't of Corrections*, 84 F.3d 614 (2d Cir.1996); *Horton v. Cockrell*, 70 F.3d 397, 399 (5th Cir.1995), or providing adequate safety apparatus on an obviously dangerous machine, *Bagola v. Kindt*, 39 F.3d 779, 780 (7th Cir.1994). In such cases, prison officials have a constitutional duty to take reasonable measures to protect prisoners against current threats of attack and other "'sufficiently imminent dangers' . . . likely to cause harm." *Horton*, 70 F.3d at 401 (quoting *Helling v. McKinney*, 509 U.S. 25, 34 (1993)).

*Grimsley v. MacKay*, 93 F.3d 676, 681 (10th Cir. 1996). The Tenth Circuit has also said:

> The Supreme Court has rejected the notion that the Eighth Amendment does not reach official conduct that "is sure or very likely to cause" serious injury at the hands of other inmates. *Helling v. McKinney*, 509 U.S. 25, 33, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993) ("We have great difficulty agreeing that prison authorities may not be deliberately indifferent to an inmate's current health

> problems but may ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year."); accord Ramos v. Lamm, 639 F.2d 559, 572 (10th Cir.1980) ("[A]n inmate does have a right to be reasonably protected from constant threats of violence and sexual assaults from other inmates. Moreover, he does not need to wait until he is actually assaulted before obtaining relief.").

*Benefield v. McDowall*, 241 F.3d 1267, 1272 (10th Cir. 2001) ("[L]abelling an inmate a snitch satisfies the *Farmer* standard, and constitutes deliberate indifference to the safety of that inmate." *Id.* at 1271).

In his second amended complaint, which is not verified, the plaintiff alleges that out of his concern for his safety, he met and talked with Cranston on May 31, 2012. The plaintiff alleges he talked "about what he feared was happening and told M. Cranston that he felt something was going to happen to him." ECF# 13-1, p. 341.

The plaintiff has not controverted any of the following facts found in the defendant Cranston's motion. Nor has the court found any verified pleadings by the plaintiff that contradict the following. Requena placed a sick call on May 30, 2012, that stated he was concerned about "several staff . . . retaliating against" him and that he may need Cranston's help "if the retaliations continued." Cranston later wrote on the sick call request that Requena was seen on May 31 only to document that he came to mental health. Cranston avers that at the May 31 visit, Requena was "very vague in his claims and would only state that he was being retaliated against and did not want to provide any further details." ECF# 76, ¶ 21; #71-6, p.1, ¶ 7. Requena did not report to Cranston "that he was in fear of being attacked, that there was any indication of possible violence or physical threats." *Id.* at ¶ 22; *id.* at ¶ 8. If Requena had reported such fears or threats, then Cranston would have included them

13

in his notes, would have alerted the Captain, and requested Requena's placement on crisis level. *Id.* at ¶ 23; *id.* at ¶ 8. Cranston further avers that he did not fail to protect Requena as he did not have information of a possible attack and did not knowingly disregard any risk to his health or safety. *Id.* at ¶¶ 23 and 24; *id.* at ¶¶ 11 and 12.

"To satisfy the subjective component, the plaintiff must show that the defendant knew that the plaintiff faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *The Estate of Lockett by and through Lockett v. Fallin*, 841 F.3d 1098, 1112 (10th Cir. 2016), *cert. denied*, 137 S.Ct. 2298 (2017)(internal quotation marks and citations omitted). The plaintiff has not come forward with evidence showing his communications to Cranston were sufficient to put him on subjective notice that Requena faced an objectively-serious risk of harm at the hands of his fellow inmates. His communications were vague, lacking in detail, and suggested retaliation by staff, rather than any justified fear of imminent physical attack from other inmates. "Complaints that convey only a generalized, vague, or stale concern about one's safety typically will not support an inference that a prison official had actual knowledge that the prisoner was in danger." *Gevas v. McLaughlin*, 798 F.3d 475, 480-81 (7th Cir. 2015) (citations omitted). "By contrast, a complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk. *Id.* at 481 (citation omitted). There is no evidence that Requena communicated enough information to infer that Cranston had knowledge of a

14

substantial risk of harm to Requena. He did not inform Cranston of any risk connected to retaliation from other Native American inmates for his taking of the drumsticks. The defendant Cranston is entitled to summary judgment because there are no genuine issues of material fact as to keep this court from concluding as a matter of law that the plaintiff is unable to prove that Cranston knew of a substantial risk of harm and disregarded it by failing to take a reasonable measure to reduce it.

**NEWKIRK'S AND CROTTS'S DISPOSITIVE MOTION (ECF# 85)**

In his second amended complaint, the plaintiff alleges the following facts for his claim against the defendant Newkirk. On April 19 and on April 25 of 2012, he spoke with the defendant Newkirk and "requested to be transferred." ECF# 13-1, p. 340. He "expressed his concern that something might happen to him and defendant CCI Newkirk told plaintiff that it might take a couple weeks for him to be transfer." *Id.*

The defendant Newkirk has averred the following regarding the plaintiff's claim. She served as unit team counselor and recalls having no conversation with Requena during which he expressed concern over his safety. Newkirk reviewed the unit team chronological log from January 1, 2012, until Requena's transfer to a different facility in October of 2012. She found three log entries for conversations she had with Requena in March and April, and none of them reflect that Requena expressed any concern for his personal safety. Had Requena expressed safety concerns to Newkirk, a log entry would have been made, and she would have assisted him in being segregated until it was safe for re-entry to general population. She further avers that when an inmate identifies another inmate as a threat to his safety,

the matter is investigated and a central monitor may be imposed so that the inmates are not housed in the same facility. Newkirk also points out that Requena does not allege Newkirk had knowledge of his removal of the drumsticks or of specific fear of retaliation or risk of harm from other members of the Native American callout.

As for his claim against the defendant Crotts, Requena alleges the following:.

> On 6-3-2012 plaintiff was jumped and brutally beaten with a blunt object by two members of the callout. Plaintiff later was told by COI John Doe that defendant CSI Crotts . . . knew that some kind of fight was going to take place because inmates were table hopping. COI John Doe informed plaintiff that if plaintiff was to review the cameras he would see inmates table hopping and that CSI Crotts told COI John Does that when inmate do that it means a fight is getting ready to happen because them inmates are waiting for a specific inmate to come in the chow hall. COI John Doe said that when he tried to run them inmates off CSI Crotts stopped him and said that he wanted to see a fight.

*Id.* at 341. The Tenth Circuit observed that the plaintiff's allegations against Crotts are "close" because they are based on the hearsay statements of an unknown officer and because there is no allegation that "Crotts was aware of Requena's concerns of retaliation or that he would be injured." 893 F.3d at 1214, n. 14.

The defendant Crotts has averred that he received a radio call of two inmates fighting and that when he arrived on the scene he found inmate Youngblood attempting to strike Requena with a lock tied to a shoestring. ECF# 71-2, ¶ 5. He restrained the plaintiff who was fighting and escorted him to the clinic. *Id.* Crotts avers that he "had no clue before the attack that Youngblood was mad at plaintiff or planned to attack him." ECF #71-3, ¶ 6; *see* ECF# 86, ¶ 10. Crotts also avers that he "never prevented another officer from moving inmates out of the dining hall because I wanted to see a fight" and that he did not allow Requena "to become engaged in a

16

fight as retaliation for a grievance filed against me." ECF# 71-3, ¶¶ 7-8. Crotts points out that Requena does not allege that Crotts was aware of Requena's taking of the drumsticks or his fear of retaliation or risk of harm from members of the Native American callout.

Both defendants have averred to having no knowledge of any circumstances suggesting that Requena was facing a threat to his personal safety. The plaintiff has controverted any of the defendants' statement of facts and has not submitted any evidence conflicting with or contradicting the defendants' averments. The court found no verified pleadings in the record contradicting the defendants' averments. Requena's allegations about Crotts are based on the hearsay statements from an unknown officer. This is inadmissible hearsay not considered at summary judgment, and it fails to contradict Crotts's affidavit. The plaintiff has the burden to show with admissible evidence enough facts to infer that the defendants knew the plaintiff faced a substantial risk of harm and disregarded that risk. He has come forward with no evidence or facts in proof of this required element. Even assuming the plaintiff's allegations against Newkirk were true, they do not show that his communications were sufficient to put Newkirk on subjective notice that Requena faced an objectively-serious risk of harm at the hands of his fellow inmates. Requesting a transfer because something might happen to him is vague, lacks detail, and does not communicate any justified fear of imminent physical attack from other inmates. There is no evidence that Requena communicated enough information to either Newkirk or Crotts to infer that they had knowledge of a substantial risk of harm to Requena. There is no allegation or evidence they were told or that they knew of

any risk connected to retaliation from other Native American inmates for his taking of the drumsticks. "'An official's failure to alleviate a significant risk of which he was unaware, no matter how obvious the risk or how gross his negligence in failing to perceive it, is not an infliction of punishment and therefore not a constitutional violation.'" *Poore v. Glanz*, 724 Fed. Appx. 635, 639 (10th Cir. Feb. 5, 2018) (quoting *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008)). The defendants are entitled to summary judgment.

IT IS THEREFORE ORDERED that the defendant Cranston's motion for summary judgment (ECF## 75 and 76), and the defendants Wendy Newkirk's and LeVon Crotts's motion for summary judgment (ECF## 85 and 86) are granted; and

IT IS FURTHER ORDERED that the plaintiff Requena's motion for summary judgment ECF# 93 is denied.

Dated this 19th day of March, 2020, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge